# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MUBARAK SULAIMAN UKASHAT,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR RELIEF UNDER 28 U.S.C. § 2255**<br><br>Case No. 2:25-cv-759<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

The Petitioner, Mubarak Sulaiman Ukashat, seeks to vacate his conviction and sentence under 28 U.S.C. § 2255. *See* Dkt. No. 6. He also moves to lift the stay pending disposition of his direct appeal previously imposed by the court, *see* Dkt. No. 11, and to require the Government to respond to his Section 2255 motion, *see* Dkt. No. 15. The court lifts the stay but denies the motion for relief under Section 2255 and the motion to require a government response. The court grants a certificate of appealability with respect to one of the issues Mr. Ukashat raises but otherwise denies a certificate of appealability.

## I.

On March 22, 2023, Mr. Ukashat was charged by indictment with four counts of wire fraud in violation of 18 U.S.C. § 1343, aggravated identity theft in violation of 18 U.S.C. § 1028A, and two counts of money laundering in violation of 18 U.S.C. § 1957(a). *See* Case No. 2:23-cr-111, Dkt. No. 1. The United States subsequently filed three superseding indictments, collectively adding an additional count of money laundering and charging aiding-and-abetting liability under 18 U.S.C. § 2 for all counts. *See id.*, Dkt. No. 71.

On February 4, 2025, Mr. Ukashat was charged by felony information with failure to file currency and other monetary instruments reports in violation of 31 U.S.C. § 5324(c)(1). *See id.*, Dkt. No. 203. Two days later, Mr. Ukashat pleaded guilty to the felony information before now–Chief Magistrate Judge Romero. *See id.*, Dkt. No. 207. He did so pursuant to an agreement with the United States under Federal Rule of Criminal Procedure 11(c)(1)(C). As part of that agreement, Mr. Ukashat and the United States agreed that Mr. Ukashat would be sentenced to not more than 36 or less than 12 months' imprisonment and that the United States would dismiss the indictments. *See id.*, Dkt. No. 209 at 4–5. Finally, Mr. Ukashat agreed to a broad waiver of rights to appellate and collateral review of his conviction and sentence, including, as relevant here, the following provision:

> I . . . knowingly, voluntarily, and expressly waive my right to challenge my sentence, unless the sentence imposed is greater than the sentence set forth in this agreement, and my conviction, in any collateral review motion, writ or other procedure, including but not limited to a motion brought under 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel.

*Id.* at 5.

On August 21, 2025, Mr. Ukashat appeared for sentencing. *See id.*, Dkt. No. 228. The court accepted the plea agreement, granted the Government leave to dismiss the original and superseding indictments, and sentenced Mr. Ukashat to 24 months' imprisonment and three years' supervised release. *See id.*, Dkt. No. 229. Four days later, Mr. Ukashat filed a notice of appeal to the U.S. Court of Appeals for the Tenth Circuit, challenging the "judgment and sentence entered by this Court on August 21, 2025." *Id.*, Dkt. No. 235 at 1.

Mr. Ukashat then filed this motion under 28 U.S.C. § 2255, arguing that "[h]e was denied due process by prosecutorial misconduct, including suppression of exculpatory evidence, and deprived of effective assistance of counsel at critical stages." Dkt. No. 6 at 1. He contends that

"[t]he cumulative effect of these constitutional violations renders his guilty plea involuntary and his sentence unlawful." *Id.*

The court stayed Mr. Ukashat's Section 2255 motion pending resolution of his direct appeal. *See* Dkt. No. 10. Mr. Ukashat subsequently moved to withdraw his appeal, and the Tenth Circuit granted his motion and dismissed the appeal. *See* Case No. 2:23-cr-111, Dkt. No. 271. Given the dismissal of Mr. Ukashat's direct appeal, the court grants his request to lift this stay and proceeds to the merits of the Section 2255 motion.

## II.

Under 28 U.S.C. § 2255(a), "[a] prisoner in custody . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." A prisoner may also "challenge the legality of his . . . conviction" under this statute. *Cleaver v. Maye*, 773 F.3d 230, 232 (10th Cir. 2014). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon," 28 U.S.C. § 2255(b), and "order the United States attorney to file an answer, motion, or other response," Rules Governing Section 2255 Proceedings, Rule 4(b). In determining whether to require a government response and hold an evidentiary hearing, the court must consider "whether such a hearing could enable the movant to prove the motion's factual allegations, which, if true, would entitle the movant to relief." *United States v. Barrett*, 797 F.3d 1207, 1224 (10th Cir. 2015) (cleaned up) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)).

As noted, Mr. Ukashat agreed to a broad wavier of his right to challenge his conviction and sentence under Section 2255, except on the basis of ineffective assistance of counsel. The

3

court must thus determine whether Mr. Ukashat's factual allegations, if true, would (1) enable him to assert claims other than ineffective assistance of counsel despite the waiver, and (2) entitle him to relief on his ineffective-assistance-of-counsel claim or any other claim not barred by the waiver. The court addresses these issues in turn.

### III.

It is well settled that "plea-agreement waivers of § 2255 [and appellate] rights are generally enforceable." *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). "Indeed, such waivers are quite common and have been routinely affirmed by [the Tenth Circuit]." *United States v. Kent*, 361 F. App'x 920, 924 (10th Cir. 2010) (unpublished); *see also United States v. Vanderwerff*, 788 F.3d 1266, 1277 (10th Cir. 2015). So long as waivers of rights to collateral review preserve the right to assert claims of ineffective assistance of counsel—as the waiver Mr. Ukashat executed clearly does—the standard for determining their validity is the same standard that governs waivers of rights to appellate review. *See Cockerham*, 237 F.3d at 1184, 1187.[1] The court must determine "(1) whether the disputed claim falls within the scope of the waiver; (2) whether the defendant knowingly and voluntarily waived his collateral-attack rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *United States v. Mitchell*, 2025 WL 3089807, at *2 (10th Cir. Nov. 5, 2025) (unpublished) (cleaned up) (quoting *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012)).

---

[1] There may be other challenges besides those based on ineffective assistance of counsel that cannot be waived, including but perhaps not limited to challenges based on subject matter jurisdiction. *See United States v. Tony*, 637 F.3d 1153, 1157–58 (10th Cir. 2011); *United States v. Cotton*, 535 U.S. 625, 630–31 (2002). Because Mr. Ukashat does not appear to raise any such challenge, the court need not address this issue further.

**A.**

The first inquiry under this standard presents little difficulty. As relevant here, in his plea agreement, Mr. Ukashat expressly waived his

> right to challenge [his] sentence, unless the sentence imposed is greater than the sentence set forth in this agreement, and [his] conviction, in any collateral review motion, writ or other procedure, including but not limited to a motion brought under 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel.

Case No. 2:23-cr-111, Dkt. No. 209 at 5. Mr. Ukashat's collateral challenge to his *conviction* on grounds other than ineffective assistance of counsel plainly falls within the scope of this waiver. Further, as part of the same plea agreement, the parties stipulated to a sentence of not more than 36 or less than 12 months' imprisonment. *See id.* Because Mr. Ukashat's sentence of 24 months' imprisonment is within that stipulated range, his collateral challenge to his *sentence* on grounds other than ineffective assistance of counsel likewise falls within the scope of the waiver.

**B.**

The court next concludes that Mr. Ukashat's waiver was knowing and voluntary. To determine whether a waiver was knowing and voluntary, the court must consider two factors. "First," it must "examine whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily." *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004). "Second," it must "look for an adequate Federal Rule of Criminal Procedure 11 colloquy." *Id.*

In this case, Mr. Ukashat's plea agreement clearly states that he "knowingly, voluntarily, and expressly" waived his rights to challenge his sentence or conviction in a Section 2255 motion, subject to the exceptions already discussed. Case No. 2:23-cr-111, Dkt. No. 209 at 5. Mr. Ukashat also engaged in an adequate colloquy with Chief Judge Romero, *see id.*, Dkt. No. 207,

in which he clearly affirmed that his decision to plead guilty was knowing and voluntary and that he understood his waiver of rights to appellate and collateral review.[2]

To be sure, ineffective assistance of counsel, violations of *Brady v. Maryland*, 373 U.S. 83 (1963), and certain types of prosecutorial misconduct relating to the plea-bargaining process can render a guilty plea unknowing or involuntary. *See Cockerham*, 237 F.3d at 1183 (ineffective assistance of counsel); *United States v. Walters*, 269 F.3d 1207, 1214 (10th Cir. 2001) (*Brady* violation); *United States v. Wright*, 43 F.3d 491, 495, 497–98 (10th Cir. 1994) (prosecutorial misconduct). But Mr. Ukashat alleges no facts that, if true, would invalidate his plea on any of these grounds.

**1.**

First, the ineffective assistance of counsel Mr. Ukashat alleges cannot provide a basis for finding that the waiver was unknowing or involuntary. The Supreme Court has held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012) (cleaned up).

"Under *Strickland*, the defendant must first show 'counsel's performance was deficient,' and second, 'the defendant must show that the deficient performance prejudiced the defense.'" *United States v. Kearn*, 90 F.4th 1301, 1306 (10th Cir. 2024) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "To show deficiency, a defendant must show that counsel's representation fell below an objective standard of reasonableness," "evaluat[ing] the conduct from counsel's perspective at the time" of the plea-bargaining process. *Id.* (cleaned up). And to show prejudice "[i]n the context of a guilty plea," a "defendant [must] show that counsel's

---

[2] The court has reviewed the audio recording of Mr. Ukashat's change-of-plea hearing before Chief Judge Romero to determine the content and adequacy of the plea colloquy.

deficient performance affected the outcome of the plea process and that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002) (cleaned up).

Mr. Ukashat alleges four instances of ineffective assistance of counsel: (1) counsel "[f]ailed to secure or present the Interpol Nigeria Notice despite repeated instructions," (2) counsel "[f]ailed to timely file letters of support—delivering them the morning of sentencing," (3) counsel "[f]ailed to present Petitioner's concrete restitution plan of $20,000–$50,000 annual payments," and (4) "[e]arlier retained counsel disregarded Petitioner's requests to disclose evidence, leading to heated disputes before the judge." Dkt. No. 6 at 3. But it is clear from Mr. Ukashat's motion and supporting exhibits that none of these allegations relates to the plea-bargaining process.

Mr. Ukashat's principal argument—that counsel failed to secure and present the Interpol Nigeria Notice—cannot establish deficient performance or prejudice during the plea-bargaining stage because the notice did not yet then exist. Mr. Ukashat executed the plea agreement, including the waiver, and pleaded guilty on February 6, 2025. *See* Case No. 2:23-cr-111, Dkt. No. 207; *id.*, Dkt. No. 209 at 9. But it is evident from the face of the Interpol Nigeria Notice that the notice was not prepared and transmitted until July 30, 2025—almost six months after Mr. Ukashat pleaded guilty. *See* Dkt. No. 2 at 5.

Email correspondence submitted by Mr. Ukashat confirms this timeline. On August 6, 2025, Mr. Ukashat emailed counsel confirming that the Interpol Nigeria Notice had been delivered to Interpol Washington, D.C., and asking counsel to request the notice from the Government. *See id.* at 1. On August 21, 2025, the morning of sentencing, *see* Case No. 2:23-cr-

7

111, Dkt. No. 228, counsel responded that the Government had not yet received the notice, *see* Dkt. No. 2 at 3. Because the notice did not exist until nearly six months after Mr. Ukashat executed the waiver and pleaded guilty, any conceivable deficiency in counsel's later performance relating to the notice bears no connection to Mr. Ukashat's decision to take these actions. It follows that any such deficiency cannot support the conclusion that counsel provided ineffective assistance in connection with that decision.

Nor can Mr. Ukashat's remaining contentions support that conclusion. The second and third instances of alleged ineffective assistance—counsel's failure timely to file letters of support and to present Mr. Ukashat's concrete restitution plan—are plainly based on counsel's conduct at or in connection with his sentencing hearing, which took place months after his decision to plead guilty and execute the waiver. And Mr. Ukashat offers no basis for connecting the fourth instance of alleged ineffective assistance—heated disputes with his previously retained counsel in front of the judge—to the assistance he later received from different counsel in connection with the plea-bargaining process and his decision to plead guilty and execute the waiver.

In sum, because Mr. Ukashat's allegations of ineffective assistance of counsel bear no connection to the plea-bargaining process, they cannot support a conclusion that his decision to plead guilty and execute the waiver was unknowing or involuntary, even if the court assumes the allegations to be true.

## 2.

The *Brady* violations Mr. Ukashat alleges likewise cannot support a conclusion that his decision to plead guilty and execute the waiver was unknowing or involuntary. "To prove that a *Brady* violation rendered a plea involuntary, a defendant must demonstrate the exculpatory evidence is 'material'—that there is 'a reasonable probability that but for the failure to produce

8

such information the defendant would not have entered the plea but instead would have insisted on going to trial.'" *United States v. Sears*, 2022 WL 17336499, at *3 (10th Cir. Nov. 30, 2022) (unpublished) (quoting *Walters*, 269 F.3d at 1214).

Mr. Ukashat alleges two *Brady* violations: (1) that the Government withheld the Interpol Nigeria Notice, and (2) that the Government ignored investigative leads pointing to Mr. Ukashat's innocence. *See* Dkt. No. 6 at 2–4. The first alleged violation cannot support a conclusion that Mr. Ukashat's decision to plead guilty and execute the waiver was unknowing or involuntary for the same reasons his ineffective-assistance argument fails: because the Interpol Nigeria Notice did not yet exist at the time Mr. Ukashat made this decision, any subsequent failure by the Government to turn over this notice could not have affected that decision.

Nor can Mr. Ukashat's second allegation support a conclusion that either his guilty plea or the waiver was unknowing or involuntary. Even if the Government did ignore investigative leads that could have led to the discovery of exculpatory evidence, that would not amount to a *Brady* violation. To the contrary, it is well settled that "there is no affirmative duty upon the government to take action to discover information which it does not possess." *United States v. Flynn*, 2021 WL 5882240, at *3 (D. Utah Dec. 13, 2021) (cleaned up) (quoting *United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991)); *see also Armijo v. Tapia*, 288 F. App'x 530, 533–34 (10th Cir. 2008) (unpublished); *United States v. Markovich*, 95 F.4th 1367, 1376 (11th Cir. 2024).

**3.**

Certain types of prosecutorial misconduct, including "threats, misrepresentations, or improper promises" can provide a basis to "challenge the voluntary and intelligent nature of [a] plea." *United States v. Wright*, 43 F.3d 491, 495 (10th Cir. 1994) (cleaned up). To succeed on such a challenge, the petitioner "must show that there is a 'reasonable probability' that, absent

9

the alleged [misconduct], 'he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* at 498 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Apart from the alleged *Brady* violations already discussed, the prosecutorial misconduct Mr. Ukashat alleges here comprises the Government's alleged misrepresentation *at sentencing* that forfeiture would be credited toward restitution; certain statements made by the Government in its *sentencing* memorandum, which are discussed more fully below; and an allegedly misleading press release published by the Government *after sentencing*. *See* Dkt. No. 6 at 2–3. None of this alleged misconduct relates to the plea-bargaining process. Even if true, Mr. Ukashat's allegations thus cannot render the waiver unknowing or involuntary.

## C.

Finally, enforcing the waiver would not result in a miscarriage of justice. "[A] miscarriage of justice occurs (1) where the district court relied on an impermissible factor such as race, (2) where ineffective assistance of counsel *in connection with the negotiation of the waiver* renders the waiver invalid, (3) where the sentence exceeds the statutory maximum, or (4) where the waiver is otherwise unlawful." *United States v. Polly*, 630 F.3d 991, 1001 (10th Cir. 2011) (emphasis added) (cleaned up); *see also Hunter v. United States*, 608 U.S. —, 146 S. Ct. 1702, 1713–14 (2026).

Mr. Ukashat raises only two arguments that might support a theory that enforcing the waiver would lead to a miscarriage of justice: (1) that counsel rendered ineffective assistance, and (2) that the Government "emphasized [his] nationality, immigration status, and Muslim faith" at sentencing. Dkt. No. 6 at 3.

The first argument fails for the reasons already discussed. The ineffective assistance Mr. Ukashat alleges pertained to sentencing, not "the negotiation of the waiver," and thus cannot "render[] the waiver invalid."

Mr. Ukashat's second argument also fails. To be sure, the Government's sentencing memorandum did include several references to Mr. Ukashat's alienage and national origin. But the Government explained at sentencing that it was "not arguing that Mr. Ukashat should be punished more severely or more harshly because of his national origin, because he is Nigerian, or even because he is not a United States citizen . . . . He should be treated the same as a citizen would be in similar circumstances." Case No. 2:23-cr-111, Dkt. No. 257 at 18:13–20.

More important, Mr. Ukashat does not allege that the court itself relied on his national origin or race, as would be required to show a miscarriage of justice. Indeed, the court stated unequivocally at the sentencing hearing, "I don't intend to consider Mr. Ukashat's alienage or his national origin in any way in deciding the sentence." *Id.* 29:21–23; *see also id.* at 21:5–9 (similar). Mr. Ukashat does not allege that the court nevertheless considered these matters. And nothing in the record could support such an allegation in all events.

*     *     *

Even accepting Mr. Ukashat's factual allegations as true, his waiver of rights to collateral review is thus enforceable. It follows that he may not challenge his conviction or sentence on any ground raised in his motion other than ineffective assistance of counsel.

**IV.**

Although the court has already concluded that the ineffective assistance Mr. Ukashat claims he received cannot invalidate his waiver of his right to collateral review of his conviction

11

and sentence based on *other* claims, the waiver expressly preserves Mr. Ukashat's right to seek such review based on the alleged ineffective assistance of counsel itself.

To the extent Mr. Ukashat seeks to challenge his *conviction* based on alleged ineffective assistance of counsel, that challenge necessarily fails for the reasons already discussed: because the ineffective assistance he alleges did not pertain to his decision to plead guilty, it provides no basis for setting aside his guilty plea and thus invalidating his conviction.

Mr. Ukashat's challenge to his *sentence* based on the alleged ineffective assistance, by contrast, requires more thorough consideration. "Courts have long recognized the sentencing process as a critical stage of the criminal proceedings," during which a defendant is entitled to effective assistance of counsel. *United States v. Washington*, 619 F.3d 1252, 1258 (10th Cir. 2010) (collecting cases). "Under *Strickland*, the defendant must first show counsel's performance was deficient, and second, the defendant must show that the deficient performance prejudiced the defense." *Kearn*, 90 F.4th at 1306 (cleaned up). "The court may address the two *Strickland* prongs in either order and need not address both if the defendant has failed to satisfy one." *Frederick v. Quick*, 79 F.4th 1090, 1105 (10th Cir. 2023).

To show deficient performance, a defendant must show that the performance "fell below an objective standard of reasonableness as measured by prevailing professional norms." *Barrett*, 797 F.3d at 1213 (cleaned up). "This is a demanding standard, requiring a showing that the performance was outside the wide range of professionally competent assistance. The performance must have been completely unreasonable, not merely wrong." *Id.* at 1213–14 (cleaned up). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

12

challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Kearn*, 90 F.4th at 1306 (cleaned up).

To show prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Barrett*, 797 F.3d at 1214 (cleaned up). In the context of sentencing, any additional prison time attributable to counsel's errors may constitute prejudice. *See Glover v. United States*, 531 U.S. 198, 203 (2001).

### A.

Mr. Ukashat's primary contention rests on counsel's failure "to secure or present the Interpol Nigeria Notice despite repeated instructions." Dkt. No. 6 at 3. Mr. Ukashat contends that had it been submitted to the court at or before his sentencing hearing, the notice "would have corroborated [his] account of Idahosa's and Andre's roles as primary actors," "undercut the government's claim that [he] acted knowingly and independently," "bolstered [his] mitigation arguments by showing [his] nonprofit had a documented record of legitimate charitable activities," and "impeached the prosecution's narrative that 'no evidence' supported [his] claims." Dkt. No. 8 at 3. All of this, he argues, would have led to "a different and lesser sentence." *Id.* at 4.

After considering Mr. Ukashat's allegations, his exhibits, and the record, however, the court concludes that his counsel's performance was not deficient. As discussed, it is clear from Mr. Ukashat's exhibits that the Interpol Nigeria Notice was not prepared or transmitted until July 30, 2025, *see* Dkt. No. 2 at 5, and that Mr. Ukashat did not instruct counsel to request the notice until August 6, 2025, *see id.* at 1. Further, Mr. Ukashat states in his motion that "counsel requested production of [the] Interpol Nigeria Notice" on "August 11, 2025." Dkt. No. 6 at 2.

13

But as of August 21, 2025, the date of the sentencing hearing, counsel informed Mr. Ukashat that the Government had not yet obtained the notice. *See* Dkt. No. 2 at 3–4.

The notice, moreover, would not have called into question Mr. Ukashat's culpability for failing to file currency and other monetary instruments reports—the regulatory offense to which Mr. Ukashat ultimately pleaded guilty and for which he was sentenced. At most, the notice might have borne on the "relevant conduct" described in the presentence report, which encompassed the fraudulent conduct charged in the indictments to which Mr. Ukashat did not plead guilty. *See* Case No. 2:23-cr-111, Dkt. No. 222 at 8–10. But at sentencing, counsel objected to the portion of the presentence report relating to Mr. Ukashat's "relevant conduct," called the notice to the court's attention, explained that he had made a *Brady* request for the notice, and argued that Mr. Ukashat's "relevant conduct" relating to the alleged fraud was merely negligent. *See id.*, Dkt. No. 257 at 9:25–10:9, 32:14–19, 30:22–32:8; *see also id.*, Dkt. No. 226 at 5–9.

Given all this, the court concludes that counsel's performance was not deficient. Counsel requested the notice just days after Mr. Ukashat asked him to do so, and less than two weeks after the notice was prepared and transmitted. And when counsel learned that the Government had not yet received the notice as of the date of sentencing, he objected to the "relevant conduct" the notice purportedly would have mitigated and brought the existence of the notice and his request for that document to the court's attention. Under these circumstances, the court cannot conclude that counsel's performance was "completely unreasonable" or "outside the wide range of professionally competent assistance."

In his second supplemental memorandum in support of his Section 2255 motion, Mr. Ukashat advances the additional argument that counsel provided ineffective assistance by failing to "request a continuance when the government claimed no such letter could be found." Dkt. No.

14

8 at 3. But given the tangential nature of the notice to the crime of conviction; the court's requirement, reflected in the notice of hearing, that non-emergency motions to continue sentencing hearings be filed at least two weeks before the scheduled hearing, *see* Case No. 2:23-cr-111, Dkt. No. 223; counsel's undoubted awareness of the court's crowded sentencing calendar, which makes brief continuances of sentencing hearings difficult to obtain; and the onerous conditions of release—including home incarceration—to which Mr. Ukashat was subject pending sentencing, the court cannot conclude that it was "completely unreasonable" and "outside the wide range of professionally competent assistance" for counsel not to seek a continuance but instead to bring both the notice and the defense's request for it to the court's attention while also objecting to the relevant conduct described in the presentence report.

In all events, the court concludes that the alleged deficient performance did not prejudice Mr. Ukashat. Although the court overruled counsel's objection, it ultimately imposed a sentence at the low end of the Guideline range for the offense of conviction, rejecting the Government's request to impose a higher sentence. Having reviewed the notice, the court thinks it extremely doubtful that Mr. Ukashat would have received a lower sentence had the sentencing hearing been delayed until the notice was available given the scale of the financial harm facilitated by the criminal conduct to which Mr. Ukashat pleaded guilty and the extensive circumstantial evidence of Mr. Ukashat's culpability relating to the relevant conduct, as highlighted by both the Government and the court at the sentencing hearing.

**B.**

The court need not decide whether any of the remaining incidents alleged by Mr. Ukashat amounted to constitutionally deficient performance because it is clear from the face of the record that none of them resulted in any prejudice to Mr. Ukashat at his sentencing.

First, Mr. Ukashat argues that counsel provided ineffective assistance by failing "to timely file letters of support—delivering them the morning of sentencing." Dkt. No. 6 at 3. To be sure, counsel's delay in submitting the letters prevented the court from reviewing them before the sentencing hearing began. But upon learning of the letters, the court paused the proceedings and read all of the submitted letters carefully before continuing with the hearing. *See* Case No. 2:23-cr-111, Dkt. No. 257 at 5:18–21. It is thus clear from the record that Mr. Ukashat cannot show a "reasonable probability" that "the result of the proceedings would have been different" had counsel submitted the letters earlier.

Mr. Ukashat next complains of counsel's failure "to present Petitioner's concrete restitution plan of $20,000–$50,000 annual payments" to the court during his sentencing hearing. Dkt. No. 6 at 3. But assuming Mr. Ukashat had the financial resources to make this plan plausible, the Tenth Circuit has held it improper for a district court to "impose[] a lenient . . . sentence because [the defendant's] high income allowed him to make restitution payments to his victims," explaining that "[o]ur system of justice has no sentencing discount for wealth." *United States v. Sample*, 901 F.3d 1196, 1201 (10th Cir. 2018). Mr. Ukashat provides no basis to think that the court would have disregarded this clear guidance. He thus cannot show a reasonable probability that evidence of his alleged ability to make large restitution payments would have reduced his sentence.

Finally, Mr. Ukashat argues that "[e]arlier retained counsel" was ineffective for "disregard[ing] Petitioner's requests to disclose evidence, leading to heated disputes before the judge." Dkt. No. 6 at 3. But "earlier retained counsel" withdrew in June 2024. *See* Case No. 2:23-cr-111, Dkt. No. 160. Mr. Ukashat identifies nothing in the record that could support a conclusion that these alleged "heated disputes" had any effect on the sentence he received more

16

than a year later. Certainly, he cannot show a reasonable probability that, absent those disputes, he would have received a lesser sentence.

*   *   *

In sum, even accepting Mr. Ukashat's factual allegations as true, the court concludes that "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). It follows that Mr. Ukashat's motion for relief under Section 2255 must be denied and that the court need not order a government response or conduct an evidentiary hearing regarding the truth of his allegations before denying the motion.

When denying a motion for relief under Section 2255, the court must "issue or deny a certificate of appealability." Rules Governing Section 2255 Proceedings, Rule 11(a). Under 28 U.S.C § 2253, a certificate of appealability will issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This standard requires "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (cleaned up). Although the court concludes that counsel did not perform deficiently by proceeding with sentencing without requesting a continuance and that Mr. Ukashat suffered no prejudice from counsel's failure to seek a continuance in all events, reasonable jurists could perhaps debate those conclusions. The court concludes that the remaining issues raised by Mr. Ukashat do not meet this standard, however.

For the foregoing reasons, Docket Number 11, Motion to Lift Stay of § 2255 Proceedings, is **GRANTED** to the extent Mr. Ukashat simply seeks to lift the stay so the court

17

can adjudicate his Section 2255 motion but is otherwise **DENIED**.[3] Docket Number 6, Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, and Docket Number 15, Motion Requesting the Court to Direct the United States to Respond to Petitioner's Motion under 28 U.S.C. § 2255, are **DENIED**. A certificate of appealability is **GRANTED** with respect to Mr. Ukashat's contention that counsel rendered ineffective assistance by failing to request a continuance of the sentencing hearing so that the Interpol Nigeria Notice could be presented to the court before it imposed sentence but is otherwise **DENIED**.

    **IT IS SO ORDERED.**

Dated this 7th day of August, 2026.
BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge

---

[3] The court has determined that Mr. Ukashat's claims may be resolved without discovery or an evidentiary hearing. *See* Rules Governing Section 2255 Proceedings, Rules 6(a), 8(c). And it concludes that Mr. Ukashat's claims lack merit, do not present complex factual or legal issues, and have been competently presented by Mr. Ukashat. *See Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). The court accordingly denies his request to appoint counsel. In addition, the court denies as moot Mr. Ukashat's request to reconsider its previous denial of his motion to stay voluntary surrender. *See* Case No. 2:23-cr-111, Dkt. No. 265.